UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NEW YORK CIVIL LIBERTIES UNION, | |
| Plaintiff, | **COMPLAINT** |
| v. | |
| UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, | |
| Defendant. | |

## INTRODUCTION

1.      The New York Civil Liberties Union brings this action under the Freedom of Information Act to force the U.S. Immigration and Customs Enforcement to release records sought by the NYCLU about how ICE conducts custody determinations for thousands of people it detains each year and the outcome of those determinations, particularly for individuals in New York State. These custody determinations are of immense public significance, as they dictate whether people ICE has arrested will be incarcerated for weeks or months awaiting an initial appearance before an immigration court or released on bond or recognizance and allowed to return home to their families.

2.      In June 2018, media outlets reported for the first time that ICE had recently modified the algorithm for a "computer-based risk classification assessment tool" that its officers use as part of the custody determination process. This modification altered the tool so that it cannot result in a recommendation to release a person from custody on bond.

This change has reportedly contributed to a dramatic rise in the number of people currently in ICE detention.

3.      This change in ICE policy—as well as the ensuing rise in the number of people detained and the resulting expense to the federal government—has generated widespread public interest. President Trump's immigration enforcement efforts and White House comments critical of the practice of "catch and release" of immigrants in removal proceedings have amplified this interest.

4.      Despite the significance and urgent public need for information on these policies, ICE failed to respond to the NYCLU's request for records within the time period prescribed by FOIA and wrongly denied the NYCLU's request for expedited processing. To remedy that, the NYCLU seeks an order compelling ICE to conduct a thorough search for all responsive records, immediately process all located records, promptly disclose the requested records in their entirety and make copies available to the NYCLU, and award the NYCLU costs and reasonable attorneys' fees incurred in this action.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction and personal jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B), (a)(6)(E)(iii). This Court also has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1346 and 5 U.S.C. §§ 701-706.

6.      Venue lies in the Southern District of New York pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e)(1).

## PARTIES

7.     Plaintiff New York Civil Liberties Union ("NYCLU") is the New York State affiliate of the American Civil Liberties Union. The NYCLU is a not-for-profit corporation incorporated in New York State with approximately 140,000 members dedicated to the constitutional principles of liberty and equality.  The NYCLU defends the civil rights and civil liberties of New Yorkers and is committed to ensuring that the United States government complies with the Constitution and laws of this country, including its international legal obligations, in matters that affect civil liberties and human rights. The NYCLU is also committed to principles of transparency and accountability in government, and seeks to ensure that the public is informed about the conduct of its government in matters that affect civil liberties and human rights. Obtaining information about governmental activity, analyzing that information, and widely publishing and disseminating it to the press and the public is a critical and substantial component of the NYCLU's work. To inform the public about government conduct affecting legal rights, the NYCLU publishes newsletters, press releases, know-your-rights handbooks, and numerous other materials.  NYCLU publications are available to everyone—including tax-exempt organizations, not-for-profit groups, law students, and academics—for no cost or for a nominal fee. The NYCLU also disseminates information through its website—www.nyclu.org—and through an electronic newsletter, which is received by thousands of subscribers.

8.     Defendant United States Immigration and Customs Enforcement ("ICE") is a component of the United States Department of Homeland Security ("DHS") and is an agency within the meaning of 5 U.S.C. § 552(f)(1).

**FACTUAL BACKGROUND**

9.      Currently, ICE detains over a hundred thousand people a year for potential removal from the United States, many of them in New York State.[1] Since 2017, the total number of detentions by ICE has risen significantly—in many places, including New York, nearly doubling.[2] By October 2018, the average daily population of immigrants in ICE detention reached a new record high.[3]

10.      These detentions have affected a huge number of people, particularly in states like New York with sizable immigrant communities.

11.      Within 48 hours of detention, ICE must make a custody determination. *See* 8 C.F.R. §§ 287.3(d), 236.1(c)(8). The outcome of that determination dictates whether a person will be detained in a jail until his or her first appearance before an immigration judge or released upon payment of a monetary bond or on recognizance.

12.      Individuals denied bond or release on recognizance by ICE must remain incarcerated until at least their first court appearance and possibly longer. *See* 8 C.F.R. §§ 1003.19(a). In the New York City area, the median wait time is now over 80 days—up from 42 days just a year ago and 11 days in 2014.[4] The detention of thousands of people during this waiting period compromises significant liberty and family unity interests. In New York City, a study in 2016 of individuals detained for removal proceedings found that half had children living at home with them—a majority of those children U.S.

---

[1] *See Immigration and Customs Enforcement Arrests: ICE Data through May 2018*, TRAC Immigration, http://trac.syr.edu/phptools/immigration/arrest/.
[2] *Id.* (documenting 3,385 detentions in New York the first seven months of FY2018 compared with 4,065 in the entirety of FY2017).
[3] Spencer Ackerman, *ICE Is Imprisoning a Record 44,000 People*, DAILY BEAST (Nov. 11, 2018), https://www.thedailybeast.com/ice-is-imprisoning-a-record-44000-people. While this information was revealed publicly after the date of this request, the Defendant is aware and indeed has exclusive knowledge of the number of people detained in its custody at any given time.
[4] *See* Decl. of David Hausman ¶ 5, *Vasquez Perez v. Decker*, 18-cv-10683 (S.D.N.Y. filed Nov. 15, 2018), ECF No. 50-7.

citizens.[5] Two-thirds were employed.[6] Incarceration pending a first court appearance threatens the livelihoods and homes of detained individuals as well as the health and wellbeing of their children and other family members.[7] Conditions in immigration detention centers are notoriously poor, with inadequate healthcare and the same restrictions on movement, visits and phone calls as criminal custody.[8]

13.    Detention is also costly. In the past year, the rising number of detained immigrants has reportedly led ICE to divert funds from other agencies in order to meet growing costs.[9]

14.    Because of the heavy human toll and financial costs associated with immigration detention, there is an immense public interest in ICE's custody determinations policies, practices and procedures. Despite this public interest, very little information is available publicly about how ICE makes its initial custody determination and who if anyone is released pending their initial court appearance.  In February 2017, Defendant further obscured this already opaque process by rescinding all previous

---

[5] The study analyzed the characteristics of individuals who received free legal representation through the New York Immigrant Family Unity Project, which provides legal services to indigent individuals who remain detained at their first court appearance. Jennifer Stave, et al., *Evaluation of the New York Immigrant Family Unity Project: Assessing the Impact of Legal Representation on Family and Community Unity*, Vera Institute of Justice (Nov. 2017), at 17, 20.

[6] *Id.* at 17.

[7] *See e.g.*, Samantha Artiga and Barbara Lyons, *Family Consequences of Detention/Deportation: Effect on Finances, Health, and Well-Being*, Henry J Kaiser Family Foundation (Sept. 18, 2018), https://www.kff.org/disparities-policy/issue-brief/family-consequences-of-detention-deportation-effects-on-finances-health-and-well-being/ (reporting the consequences of detention and deportation practices); *U.S. Citizen Children Impacted by Immigration Enforcement*, American Immigration Council (May 23, 2018), https://americanimmigrationcouncil.org/research/us-citizen-children-impacted-immigration-enforcement (compiling research on the effects of immigration enforcement on U.S. citizen children).

[8] *See generally Detained and Denied: Healthcare Access in Immigration Detention*, New York Lawyers for the Public Interest (Feb. 15, 2017), http://www.nylpi.org/wp-content/uploads/2017/02/HJ-Health-in-Immigration-Detention-Report_2017.pdf.

[9] Spencer Ackerman, *ICE Is Imprisoning a Record 44,000 People*, *supra* at n. 3.

guidance on ICE enforcement priorities and the factors that ICE considers in exercising discretion to release.[10]

## ICE'S CHANGE IN THE RISK CLASSIFICATION ASSESSMENT TOOL

15.     In June 2018, Reuters reported that ICE had "modified a [risk classification assessment] tool officers have been using since 2013 when deciding whether an immigrant should be detained or released on bond."[11] The computer-based tool, which in the past recommended either "detention" or "release" on bond for individuals undergoing removal hearings based on risk assessments, has been modified to be unable to recommend release.[12] After the tool was modified in 2017, "[t]he number of immigrants with no criminal history ICE booked into detention tripled to more than 43,000" when compared to 2016 data.[13]

16.     This change, which increased the population of individuals in ICE custody and caused significant financial expense, generated broad media interest. The plaintiffs filed this records request within weeks of that report.

17.     The reported change in custody determinations created an urgent need to inform the public about a government activity affecting the liberty and family unity of tens

---

[10] John Kelly, *Memorandum: Enforcement of the Immigration Laws to Serve the National Interest*, U.S. Department of Homeland Security (Feb. 20, 2017), https://www.dhs.gov/sites/default/files/publications/17_0220_S1_Enforcement-of-the-Immigration-Laws-to-Serve-the-National-Interest.pdf.
[11] Mica Rosenberg & Reade Levinson, *Trump's Catch-and-Detain Policy Snares Many Who Have Long Called U.S. Home*, REUTERS (June 20, 2018), https://www.reuters.com/investigates/special-report/usa-immigration-court/ ("In earlier years, ICE would have released many of these people on bond soon after their arrest, allowing them to live with their families while awaiting legal proceedings that can take years. Now, ICE is denying bond for many of those people and pushing to keep them in detention for the duration of their cases, Reuters found, based on an analysis of government data and dozens of interviews with immigration judges, lawyers and current and former officials.").
[12] Daniel Oberhaus, *ICE Modified Its 'Risk Assessment' Software So It Automatically Recommends Detention*, VICE NEWS (June 26, 2018), https://motherboard.vice.com/en_us/article/evk3kw/ice-modified-its-risk-assessment-softwareso-it-automatically-recommends-detention.
[13] Rosenberg & Levinson, *Trump's Catch-and-Detain Policy Snares Many Who Have Long Called U.S. Home*, *supra* at n. 11.

of thousands of people. In the face of these reported changes and the obscurity of the custody-determination process, it is impossible for organizations like the New York Civil Liberties Union to disseminate accurate information to the public or to counsel clients, advocates, and attorneys on what information is relevant to ICE's custody determinations and how best to advocate for their client's release. The lack of information also impedes political and fiscal accountability.

## THE PLAINTIFF'S FOIA REQUEST & DEFENDANT'S RESPONSE

18.     On July 24, 2018, the NYCLU submitted a FOIA request to ICE seeking policies and records regarding custody determinations, with particular detail sought about the outcomes of custody determinations in New York State. *See* FOIA Request, attached as Exhibit A.

19.     As permitted by FOIA, the NYCLU sought expedited processing of the Request on the ground that there is a "compelling need" for these records because the information requested is urgently needed by an organization primarily engaged in disseminating information in order to inform the public about actual or alleged federal government activity.

20.     Also as permitted by FOIA, the NYCLU sought a waiver of search, review, and duplication fees on the grounds that disclosure of the requested records is "in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." Similarly, the NYCLU sought a waiver of search fees on the grounds that the NYCLU qualifies as a "representative of the news media" and that the records are not sought for commercial use.

21.    In an email dated August 6, 2018, the ICE FOIA Office acknowledged receipt of the NYCLU's request and assigned the request ICE FOIA Case Number 2018-ICFO-54305. In its email, ICE granted the request for a fee waiver and denied the request for expedited processing. This email gave no response as to whether the request for records had been granted or denied.

22.    Under the FOIA, Defendant has twenty working days to respond to a request. If there are "unusual circumstances," an agency may extend the time limit by no more than ten working days. Yet the NYCLU has received no substantive response to the records request since the August 6 email.

23.    On October 3, 2018, 72 business days after the Request was submitted, the NYCLU filed an administrative appeal letter to ICE Office of the Principal Legal Advisor, appealing the constructive denial of the request for records, and the denial of the request for expedited processing.

24.    On October 12, 2018, the ICE Office of the Principal Legal Advisor acknowledged in an email the receipt of the administrative appeal.

25.    On November 7, 2018, the date on which a response to the Plaintiff's appeal was due, the ICE Office of the Principal Legal Advisor emailed the Plaintiff a letter in response. In that letter, ICE affirmed its denial of the request for expedited processing. It explained that although the "request concerns a federal government activity and shows the requester's capability to disseminate information, the reasons provided do not demonstrate that there is an urgency to inform the public about such federal government activity which is 'beyond the public's right to know about government activity generally.'"

26.     Beyond denying expedited processing, ICE's November 7 letter provided no substantive response to the request for records and failed to provide a response to the request for records as mandated by the FOIA. Instead, ICE simply stated that it was unable to meet the due date to provide a response to the request for records, because it is processing the request on a "first-in, first-out basis." It provided no other explanation or response and no date by which a determination should be expected.

27.     Since then, ICE has neither released responsive records nor explained its failure to do so.

28.     Plaintiff has exhausted all administrative remedies by submitting an administrative appeal of the constructive denial of its request and the denial of expedited processing.

## CAUSE OF ACTION

29.     The Defendant's actions, including its constructive denial of the Plaintiff's request and denial of the Plaintiff's request for expedited processing, violate the FOIA statute, 5 U.S.C. § 552(a), and the corresponding regulations.

## REQUESTED RELIEF

WHEREFORE, Plaintiff requests that this Court:

1. Order Defendant to conduct a thorough search for all responsive records;

2. Order Defendant to immediately process all located records;

3. Order Defendant to promptly disclose the requested records in their entirety, and make copies available to Plaintiff;

4. Award Plaintiff its costs and reasonable attorneys' fees incurred in this action under 5 U.S.C. § 552(a)(4)(E); and

5.  Grant such other relief as the Court may deem just and proper.


Respectfully submitted,


NEW YORK CIVIL LIBERTIES UNION
    FOUNDATION, by

*/s/ Paige Austin*
Paige Austin
Christopher Dunn
125 Broad Street, 19th Floor
New York, New York 10004-2400
(212) 607-3398
paustin@nyclu.org
cdunn@nyclu.org


Dated:  December 11, 2018
        New York, N.Y.


*On the Complaint: Ben Choi*